UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIE MCARDLE,

                    Plaintiff,

       -against-

ARMS ACRES, INC., OMAR
GUTIERREZ, M.D., and FREDERICK
HESSE, M.D.,

                    Defendants.

**MEMORANDUM OPINION
AND ORDER**

03 Civ. 05721 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

In this action, Plaintiff Marie McArdle asserts hostile work environment and retaliation claims against (1) her employer, Arms Acres; (2) co-worker Omar Gutierrez, who Plaintiff claims harassed her; and (3) Frederick Hesse, who was Gutierrez's supervisor, and who Plaintiff claims knowingly permitted Gutierrez's harassment to continue and then retaliated against her for complaining about it.  Plaintiff asserts these claims under both Title VII and the New York State Human Rights Law ("NYSHRL").  In addition, Plaintiff asserts state law claims against Arms Acres and Hesse for intentional infliction of emotional distress and negligent hiring and supervision. Arms Acres and Hesse have jointly moved for summary judgment, as has Gutierrez by separate motion.  For the reasons stated below, Arms Acres' and Hesse's motion (Docket No. 46) is GRANTED IN PART and DENIED IN PART, and Gutierrez's motion (Docket No. 50) is also GRANTED IN PART and DENIED IN PART.

## DISCUSSION

Summary judgment is warranted if the moving party shows that "there is no genuine issue as to any material fact" and that it "is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor," Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008), and the Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment," Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).

"It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases," and that "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to . . . other areas of litigation."  Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001).  As in any other case, "an employment discrimination plaintiff faced with a properly supported summary judgment motion must 'do more than simply show that there is some metaphysical doubt as to the material facts'. . . . She must come forth with evidence sufficient to allow a reasonable jury to find in her favor."  Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

The Court is mindful that "direct evidence of . . . [discriminatory] intent will only rarely be available, . . . [so] 'affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'" Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008).  However, the Court must also "carefully distinguish between evidence that allows for a reasonable inference of

2

discrimination and evidence that gives rise to mere speculation and conjecture."

Bickerstaff v. Vassar Coll., 196 F.3d 435, 448 (2d Cir. 1999).

As is done routinely in this Circuit, the Court will treat Plaintiff's claims under Title VII and the NYSHRL as analytically identical, applying the same standard of proof to both claims.  See Schiano v. Quality Payroll Sys., 445 F.3d 597, 609 (2d Cir. 2006) (applying same standards to hostile work environment claims under federal and New York state law).

## I.    FACTS

Defendant Arms Acres operates a drug and alcohol rehabilitation facility in Carmel, New York.  (Def. Rule 56.1 Stat. ¶ 1)[1]  Plaintiff Marie McArdle was employed as a registered nurse at Arms Acres in the Primary Care Unit from September 15, 1998 through at least September 22, 2006.  (Id. ¶¶ 10-11)  During the time period relevant to this action, Defendant Hesse was the Medical Director at Arms Acres and Defendant Gutierrez was the Director of Psychiatry.  (Id. ¶ 3)

Plaintiff's supervisors during the relevant time period were Director of Nursing Barbara Klein and Nursing Supervisor Cynthia Lipton.  (Id. ¶ 14)  Defendant Hesse was Defendant Gutierrez's supervisor.  (Id. ¶ 4)  Hesse, like Director of Nursing Klein, reported to Arms Acres' Executive Director, Patrice Wallace Moore.  (Baken Ex. H)  Neither Hesse nor Gutierrez ever served as Plaintiff's supervisor.  (Id. ¶ 18)

---

[1]  The citations to Defendants' Rule 56.1 Statement reflect instances in which Plaintiff either did not contest Defendants' Statement or did not offer sufficient admissible evidence to create a factual dispute.

A.      <u>Arms Acres' Sexual Harassment Policy</u>

As of at least June 1999, Arms Acres had a policy prohibiting sexual harassment and providing a procedure for reporting and investigating complaints of sexual harassment.  (<u>See</u> Pltf. Ex. 8; Def. Ex. M at 1; Berkowitz Dep. 52:6-14)  The policy defined sexual harassment as including, among other things, "verbal or physical conduct of a sexual nature."  (Pltf. Ex. 8 at 1; Def. Ex. M at 1)  It listed "sexually-related comments," "[u]ndesired, intentional touching, i.e., embracing, patting, pinching," and "obscene and suggestive remarks that are objectionable or discomforting to the recipient" as examples of unacceptable behavior.  (<u>Id.</u>)  The policy provided that "[a]ny employee who feels that he or she is a victim of sexual harassment or witnesses such conduct should immediately report such incident" to his or her supervisor, a member of management, the Director of Human Resources, or a designated union representative. (Pltf. Ex. 8 at 2; Def. Ex. M at 2)

The parties dispute the extent to which the sexual harassment policy was made available to employees, or was generally known by employees, prior to Plaintiff's May 1, 2002 complaint.[2]  Defendants assert, however, that Gutierrez and Hesse had

--------------------------------------------

[2]  Contrary to Defendants' assertion (Def. Rule 56.1 Stat. ¶ 69), Plaintiff has not conceded that she received a copy of a sexual harassment policy or training concerning sexual harassment prior to May 1, 2002, and Defendants have not offered evidence showing that she did.  Testimony from the Defendants concerning disclosure of, and training concerning, the sexual harassment policy is mixed.  Gutierrez testified that he only recalled receiving sexual harassment training in August 2002, December 2002 and sometime in 2003.  (Gutierrez Dep. 88:14-89:4)  Beverly Berkowitz, Director of Human Resources, testified that before May 2002 copies of Arms Acres' employee policy manual – which contained the sexual harassment policy – were kept in the personnel office, in the Executive Director's office, and on a shared computer drive that managers could access.  (Berkowitz Dep. 41:14-43:23)  While it is not clear whether copies of the manual were distributed to employees prior to May 2002, Berkowitz believes that a

copies of Arms Acres' sexual harassment policy and received training concerning the policy prior to McArdle's complaint.  (Def. Rule 56.1 Stat. ¶¶ 72-78)  Moreover, there is evidence that an employee training session in 2000 or 2001 included a discussion of the sexual harassment policy.  (Berkowitz Dep. 52:15-53:17 (harassment policy was "spoken about" at annual trainings beginning in 2000); Hesse Dep. 51:17-55:8, 133:21-134:8 (recalling a training occurring in 2000 or 2001))

#### B. The Alleged Harassment

Between 1999 and 2001, Plaintiff and Gutierrez had a friendly and polite relationship limited to passing greetings and the referral of psychiatric patients.  (Def. Rule 56.1 Stat. ¶¶ 79-80)  In November 2001, however, Plaintiff approached Gutierrez for advice on how to deal with her four-year-old son's temper tantrums.  (Id. ¶ 81; McArdle Dep. 174:22-175:2, 180:14-20)  As a result, interaction between Plaintiff and Gutierrez increased somewhat in subsequent weeks but remained friendly and polite. McArdle Dep. 183:6-25)

In late January or early February 2002, however, Plaintiff felt that Gutierrez started to become "more risque" in his interactions with her.  (Id. 183:2-10, 198:2-5)  Gutierrez began regularly complimenting Plaintiff on her appearance and smell, which began to bother her as the comments got "more flirtatious."  (Id. 303:12-19; Pltf. Ex. 78 (McArdle Aff.) ¶ 9)  On several occasions, Gutierrez commented on "how [Plaintiff's] behind looked" and told her that she "should wear those pants more often." (McArdle Dep. 189:23-25, 208:11-16; see also Def. Rule 56.1 Stat. ¶ 105)  Plaintiff

---

poster concerning sexual harassment might have been displayed on bulletin boards in Arms Acres' reception area, mailroom and human resources office.  (Id. 58:6-60:24)

5

"repeatedly told him to stop it," but he did not.  (McArdle Dep. 208:14-15)  Gutierrez

also asked Plaintiff out to lunch "numerous" times, and asked her approximately once per

week if she would like to go to the gym with him, but Plaintiff refused.  (Id. 184:25-

185:3, 681:15-24)  On one occasion in late March, Gutierrez called Plaintiff at her home

and left a message asking her to lunch.  (Pltf. Ex. 78 (McArdle Aff.) ¶ 11)

    Gutierrez also began touching Plaintiff.  He "would rub [her] arm," even

though she told him that was not acceptable.  (McArdle Dep. 185:4-6)  He also would

"squeeze [her] elbow area," "rub . . . [her] back" and "caress[] [her] neck from behind."

(Id. 184:22-23, 315:14-17, 437:2-9)  This happened more than ten times.  (Id. 667:2-

668:3)

    One day in mid-March or early April 2002, Gutierrez noticed Plaintiff

speaking with nurse practitioner Leslie Mugavero in Mugavero's office.  (McArdle Dep.

188:21-23; Pltf. Ex. 78 (McArdle Aff.) ¶ 12)  Gutierrez asked them how they were doing,

and then commented to Plaintiff, "Gee, I love that lipstick, it looks good, I would love to

taste it."  (McArdle Dep. 188:21-189:2)  He then – in Mugavero's presence – kissed

Plaintiff on the mouth.  (Id. 189:2-5; Mugavero Aff. ¶ 14)  Plaintiff told him his behavior

was "disgusting" and that he should not do it again.  (McArdle Dep. 190:17-20)  Plaintiff

did not report this incident at that time, but she believed that Mugavero had reported it to

Hesse.  (Id. 190:25-192:9)  Mugavero's testimony is that she told Hesse "about the

kissing incident" on April 21, 2002, and recommended that he "do something about

[Gutierrez]" and "tell [Gutierrez] that he had to cool it."  (Mugavero Dep. 124:25-125:22;

Mugavero Aff. ¶ 14)  Hesse denies that any such conversation took place.  (Hesse Dep.

407-11)

In early or mid-April, Gutierrez found Plaintiff in the medication room. He came up behind her to reach for a book, and while doing so, "leaned into" her "buttocks" with his "hips and his pubic region." (McArdle Dep. 90:20-93:5, 96:9-13; Pltf. Ex. 78 (McArdle Aff.) ¶ 14)  While doing so he stated, "Marie, you have my favorite slacks on, you look eatable from behind."  (Pltf. Ex. 78 (McArdle Aff.) ¶ 14)  Plaintiff believed that Gutierrez had an erection and was "shocked," "upset" and "very embarrassed" by his actions.  (McArdle Dep. 93:3-25)

On April 20, 2002, Plaintiff attended a party at a co-worker's house. Gutierrez also attended with his wife.  (Id. 202:4-203:7)  At the party, Gutierrez "followed" Plaintiff "everywhere."  (Id. 203:22-23)  At one point, as they passed each other in a doorway, Gutierrez "grabbed [Plaintiff's] butt cheek really hard."  (Id. 205:15-205:2)  Plaintiff told Gutierrez that he was "a disgusting pig" and left the party shortly afterwards.  (Id. 206:6-7)  Mugavero told Hesse that night that Gutierrez had been following Plaintiff around at the party.  (Mugavero Dep. 71:15-21; Umali Aff. ¶ 9)

On the Monday following the party, Plaintiff passed by Gutierrez's office and found him waiting for her.  (McArdle Dep. 193:23-24)  He told her that she looked great at the party, and that if it was his "last day on earth," he "would love" to "make love to [her]."  (Id. 193:23-194:4)  Plaintiff responded that she was "sick" and had "had it." (Id. at 194:3-4)

**C.    Plaintiff's May 1, 2002 Complaint and Arms Acres' Response**

Plaintiff spoke to her doctor about Gutierrez's conduct on April 29, 2002, and, on his advice, decided to report Gutierrez's behavior to her union representative and to the human resources department.  (Id. 195:6-24, 97:12-25)  Plaintiff first approached a representative of the Employee Assistance Program, Art Sioris, sometime between April

29 and May 1, 2002.  (Def. Rule 56.1 Stat. ¶ 149)  At Sioris's suggestion, Plaintiff

approached five of her co-workers on May 1 and asked them to write statements

describing any inappropriate conduct by Gutierrez that they had observed.  (Pltf. Rule

56.1 Response ¶ 153)  After receiving statements from these co-workers, Plaintiff met

with her union representative, Carol Croghan, on May 1, 2002, to report what she

perceived as Gutierrez's sexual harassment.  (Id. ¶ 156)

        Later that day, Plaintiff met with Croghan and Director of Human

Resources Beverly Berkowitz to formally complain that Gutierrez was sexually harassing

her.  (Id. ¶ 157)  Berkowitz interviewed Plaintiff and took the five co-worker statements

and a written statement by Plaintiff.  (Id. ¶¶ 162-63)  Over the next two days, Berkowitz

also interviewed Gutierrez, the five co-workers who provided statements, and Plaintiff's

two supervisors.  (Id. ¶ 170)  Plaintiff had requested that Berkowitz interview three other

employees, including Hesse, but Berkowitz declined to do so.  (Id. ¶ 170)

        Berkowitz concluded that Gutierrez had not violated Arms Acres' sexual

harassment policy, but that he had "engaged in behavior that was 'inconsistent' with

professional boundaries."  (Def. Rule 56.1 Stat. ¶ 208)  She recommended that Gutierrez

be disciplined, and on May 9, 2002, Hesse issued Gutierrez a written warning.  (Id. ¶¶

212-13)  The written warning stated, among other things, that Gutierrez was prohibited

from engaging in "any flirtatious/sexual behavior toward employees, including but not

limited to . . . uninvited touching . . . [and] sexually related comments."  (Id. ¶ 215)  It

also required Gutierrez "to improve his awareness of professional boundaries by

attending a relevant seminar within six months."  (Id. ¶ 217)  Further, Gutierrez was

directed to announce himself before entering the Primary Care Unit where Plaintiff

worked, so that she could minimize her contact with him.  (Id. ¶ 221)  (See also Pltf. Ex. 3)

        After May 9, 2002, Plaintiff's supervisor, Lipton, met with Plaintiff on a weekly basis "to monitor her comfort level at work and with Defendant Gutierrez in particular."  (Id. ¶ 226)  Plaintiff did not report any other complaints about Gutierrez during these meetings, except that during the June 7, 2002 meeting, she stated that Gutierrez "had made eye contact with her with a 'Cheshire cat grin' on his face."  (Id. ¶ 229)  On August 1, 2002, Berkowitz notified Plaintiff that Gutierrez would no longer be required to announce his presence in the Primary Care Unit, and reminded her that if she felt Gutierrez's behavior was inappropriate, she could report it at any time to Berkowitz, Croghan, or Sioris.  (Id. ¶¶ 232-34)

        Plaintiff "ha[s]n't had any problems" with Gutierrez since August 2002, and between May 1, 2002 and August 2002, the only "problem" Plaintiff had with Gutierrez is that he would sometimes "stare[] [her] down" or go "by with a smirk." (McArdle Dep. 157:7-25, 158:5-7, 158:16-24)  Gutierrez did not speak to Plaintiff again after May 1, 2002.  (Id. 327:6-8)

      **D.**    **The Alleged Retaliation**

        Plaintiff filed an EEOC charge alleging sexual harassment on approximately June 21, 2002.  (Pltf. Ex. 78 at 1, Ex. 79 at 6)  Arms Acres responded to the charge in mid-August 2002.  (Pltf. Ex. 79)  Plaintiff initiated this action on August 1, 2003.  Plaintiff claims that Arms Acres retaliated against her for engaging in this protected activity in two ways:  (1) Hesse solicited and obtained an allegedly false patient complaint against her; and (2) she was twice reprimanded about her clothing and instructed to wear a lab coat over her clothes.  (Pltf. Br. at 17)

### 1.      The Patient Complaint Letter Incident

On or about September 8, 2002, Hesse observed Plaintiff taking a patient's blood pressure in a way Hesse considered "unusual and inappropriate," because her foot appeared to be between the male patient's legs.  (Def. Rule 56.1 Stat. ¶¶ 243, 251)  Hesse – who made this observation from outside the examination room (Hesse Dep. 414:3-4) – reported his concerns to Plaintiff's supervisor, Lipton.  (Def. Rule 56.1 Stat. ¶ 244)  Lipton immediately discussed Hesse's concern with Plaintiff and her own supervisor, Klein.  Both Lipton and Klein concluded that Hesse's concern was unfounded.  (Lipton Dep. 138:9-139:11, 140:25-141:22)  Lipton informed Hesse of this within fifteen minutes of his initial conversation with her.[3]  (Id. 141:13-22)

Later that evening, Hesse approached the patient and asked whether he had been troubled by the way Plaintiff had taken his blood pressure.  The patient answered "no."  (Def. Rule 56.1 Stat. ¶¶ 245, 247)  Hesse nonetheless asked the patient to write a statement describing the incident, which the patient did.  (Id. ¶¶ 253-54)  Hesse testified that his intention was to give the statement to Lipton, and that if she thought the it was "significant," she "might" take action against Plaintiff.  (Hesse Dep. 436:12-22)

When Plaintiff learned of this the next day, she and other nurses met with the patient and asked him to write another letter explaining what had happened.  (Pltf. Rule 56.1 Stat. ¶¶ 453, 461)  The patient did so, and later requested a meeting with the Executive Director, Patrice Wallace-Moore.  (Pltf. Ex. 25 at 1)  At the meeting, the patient stated that he was upset and felt "he was being put in the middle of a problem

_____

[3]  Lipton's testimony is summarized in Plaintiff's Rule 56.1 Statement ¶ 455, to which Defendants did not make any specific objection.

between the nurses and Dr. Hesse."  (<u>Id.</u>)  The patient stated that he was upset that Hesse had asked him to write a letter describing how McArdle took his blood pressure, and had felt uncomfortable when Hesse asked him to add certain statements to the letter.  (<u>Id.</u>) The patient asked that both letters be returned to him.  (<u>Id.</u> at 2)  Hesse was directed to apologize to the patient and McArdle, and instructed that any concerns he had about an employee's performance should be directed to their supervisor.  (Pltf. Ex. 25 at 2)

### 2.    <u>The Lab Coat Incidents</u>

Plaintiff claims that Human Resources Director Berkowitz twice instructed her to put a lab coat on over her clothing in circumstances she found to be upsetting and "intimidating."  These incidents took place in November 2002 and August 2004.  (McArdle Dep. 345:30-356:21, 352:7-17, 369:25-370:3, 616:24-618:18)  During this time, Arms Acres had a written dress code providing that employees who were not dressed in accordance with the code would be asked to wear a lab coat.  (Def. Rule 56.1 Stat. ¶¶ 295-96)

### E.    <u>Defendants' Knowledge of Gutierrez's Prior Conduct</u>

Plaintiff has offered evidence that prior to her May 1, 2002 complaint Hesse – and therefore Arms Acres – was aware that Gutierrez had engaged in conduct with other female employees that violated Arms Acres' sexual harassment policy:

For example, "months" before Plaintiff's May 1, 2002 complaint, Carol Croghan – an Arms Acres nurse – Hesse, and Gutierrez were in an office preparing for medical rounds.  Another nurse entered the office, and asked where she should sit, because all the chairs were taken.  Gutierrez patted his lap and said "you can sit here." (Croghan Aff. ¶ 9)  The nurse left the office "visibly uncomfortable" with Gutierrez's remark.  After the meeting, Croghan – who was also made uncomfortable by Gutierrez's

11

remark – asked Hesse to speak to Gutierrez about "making remarks like that."  (Id.)

Hesse responded by saying that Gutierrez "didn't mean anything" by the remark,

although he acknowledged that he would not make such remarks himself.  (Id.)

Plaintiff has also offered nurse Mugavero's testimony that Mugavero had

complained to Hesse that Gutierrez had acted inappropriately toward five other female

employees.[4]  (Mugavero Dep. 69:17-23, 75:11-23, 85:6-86:11; see also Hesse Dep.

391:12-18 (agreeing that Mugavero "complain[ed] frequently about the conduct of . . .

Gutierrez toward the female staff"); Herzenberg Aff. ¶ 10 (co-worker stating that at a

dinner he attended with Mugavero and Hesse, Mugavero told Hesse to keep Gutierrez

away from the nursing station because he "chas[ed] the nurses"))  While the timing of

these incidents and Mugavero's complaints to Hesse are not entirely clear, they all appear

to have taken place before McArdle's complaint to Hesse.  In one of the incidents

Mugavero reported to Hesse, an "extremely upset" nurse complained to Mugavero that

Gutierrez had "grabbed her by the ass."  (Mugavero Dep. 85:6-86:11)

## II.    SUMMARY JUDGMENT AS TO ARMS ACRES

Against Arms Acres, Plaintiff asserts claims of (1) hostile work

environment and sexual harassment under Title VII and the NYSHRL (Counts I and III);

(2) retaliation under Title VII and the NYSHRL (Counts II, IV and IX); (3) intentional

---

[4]  Defendants argue that Plaintiff has only offered inadmissible hearsay on this point.
(Def. Reply Br. at 4)  Mugavero's testimony about the complaints she made to Hesse are
not hearsay, however, because they are offered to demonstrate that Hesse and Arms
Acres were on notice of these incidents, not to establish that they actually occurred.  See
DT v. Somers Cent. School Dist., 588 F. Supp. 2d 485, 495 (S.D.N.Y. 2008) (statements
not hearsay "because plaintiffs offer[ed] them not to prove the truth of the matter asserted
therein, but rather to prove that defendants were on notice of the matter asserted therein"
(emphasis in original)).

infliction of emotional distress (Count X); and (4) negligent supervision and retention (Count XI).  Arms Acres is entitled to summary judgment on the emotional distress, negligence, and retaliation claims, except to the extent that the latter is based on the patient complaint incident.  Arms Acres' motion is denied, however, as to Plaintiff's hostile work environment claim; her retaliation claim with respect to the patient complaint incident; and her claim for punitive damages.

A.     **Hostile Work Environment/ Sexual Harassment**

To prevail on a hostile work environment claim under Title VII, a plaintiff "must prove that the harassment was sufficiently severe or pervasive to alter the conditions of . . . [her] employment and create an abusive working environment," and "must [also] show that a specific basis exists for imputing the conduct that created the hostile environment to the employer."[5]  Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997) (internal quotation omitted).  Arms Acres has not argued that it is entitled to summary judgment because Gutierrez's conduct did not create an abusive working environment.  Instead, its sole argument for summary judgment is that Gutierrez's conduct cannot be imputed to Arms Acres.  (Def. Br. at 3-12)

Where, as here, the alleged harasser is a co-worker rather than a supervisor, an employer may be held liable where it "either provided no reasonable

---

[5]  The same standards apply to Plaintiff's claims under Title VII and the NYSHRL, including with respect to imputing liability to Arms Acres.  See Sullivan v. Newburgh Enlarged Sch. Dist., 281 F. Supp. 2d 689, 707 (S.D.N.Y. 2003) ("New York state courts require the same standard of proof for claims brought under NYHRL as those brought under Title VII, so Title VII and NYHRL claims can be analyzed in tandem," including with respect to an employer's liability for alleged co-worker harassment.); Perks v. Town of Huntington, 251 F. Supp. 2d 1143, 1158-59 (E.D.N.Y. 2003) (holding that the same vicarious liability analysis applies under federal and New York state law); Sowemimo v. D.A.O.R. Sec., Inc., 43 F. Supp. 2d 477, 486 (S.D.N.Y. 1999) (same).

avenue for complaint or knew of the harassment but did nothing about it."[6]  Perry, 115

F.3d at 149 (internal quotation omitted).  This is a negligence standard, and summary

judgment is precluded where a jury could reasonably find that the employer, "in the

exercise of reasonable care, knew or should have known about the co-worker harassment

faced by [the plaintiff], yet failed to take appropriate remedial action."  Fairbrother v.

Morrison, 412 F.3d 39, 52 (2d Cir. 2005) (internal quotation omitted)[7]; see also Distasio

v. Perkin Elmer Corp., 157 F.3d 55, 63 (2d Cir. 1998) (an employer "will be held liable

only for its own negligence" in cases of co-worker harassment); Murray v. New York

Univ. Coll. of Dentistry, 57 F.3d 243, 249 (2d Cir. 1995) ("An employer who has notice

of a discriminatorily abusive environment in the workplace has a duty to take reasonable

steps to eliminate it.").

### 1.    Arms Acres Provided A Reasonable Avenue of Complaint

The undisputed evidence shows that Arms Acres provided a reasonable

avenue of complaint here.  While the parties dispute the extent to which employees were

aware of Arms Acres' sexual harassment policy prior to May 1, 2002 (see supra pp. 4-5

& n.2), even where an employer has no formal sexual harassment policy, a court may still

find, as a matter of law, that an employer provided a "reasonable avenue of complaint" if

the evidence shows that the plaintiff in fact knew how to make a complaint and that the

complaint was adequately addressed.  See Borrero v. Collins Bldg. Serv., Inc., No. 01-

---

[6]  Plaintiff has conceded that the standards for holding an employer liable for supervisor
harassment do not apply here.  (Pltf. Arms Acres Br. at 15 n.6)

[7]  Fairbrother was abrogated in part on unrelated grounds by the Supreme Court's
decision in Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 165
L.Ed.2d 345 (2006).  See Kessler v. Westchester County Dep't of Soc. Serv., 461 F.3d
199, 207-09 (2d Cir. 2006).

Civ.-6885(AGS), 2002 WL 31415511, at **12-13 (S.D.N.Y. Oct. 25, 2002) (regardless of adequacy of written policy, employer provided a reasonable avenue of complaint where plaintiff in fact complained of harassment to management and management promptly took steps that ended the harassment); Donovan v. Big V Supermarkets, Inc., No. 98-Civ.-3842(AGS), 1999 WL 615100, at **5-7 (S.D.N.Y. Aug. 12, 1999) (same); see also Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1180 (2d Cir. 1996) ("[T]here is no basis for a per se rule that the absence of a written sexual harassment policy, standing alone, permits a finding that the employer has failed to provide a reasonable avenue for complaint . . . ." (internal quotation omitted)).

Defendants have made that showing here.  The undisputed evidence shows that Plaintiff made a formal complaint on May 1, 2002; that the Director of Human Resources investigated the complaint; and that Arms Acres took corrective action that effectively ended the conduct that Plaintiff believes constituted harassment.[8]  (See supra p. 9)  Given this evidence, no reasonable jury could find that Arms Acres failed to provide a "reasonable avenue of complaint."

> **2.    A Jury Could Reasonably Find That Hesse, Gutierrez's Supervisor, Knew About the Harassment But Did Nothing to Remedy It**

Liability for sexual harassment may be imputed to an employer where it "knew or should have known about the co-worker harassment faced by [the plaintiff], yet

---

[8]  Plaintiff was not satisfied with this outcome or with many aspects of Berkowitz's investigation.  (Pltf. Br. at 14-15)  However, "Plaintiff was not entitled to have [Arms Acres] redress the situation in her preferred manner – she was only entitled to have the situation addressed in a manner that was reasonably calculated to end the harassment." Durant v. A.C.S. State & Local Solutions, Inc., 460 F. Supp. 2d 492, 498 (S.D.N.Y. 2006).  After May 1, 2002, Arms Acres effectively addressed the conduct that Plaintiff complained of.

failed to take appropriate remedial action." Fairbrother, 412 F.3d at 52.  Moreover,

"where the person who gained notice of the harassment was the supervisor of the harasser

(e.g., had the authority to hire, fire, discipline, or transfer him), knowledge will be

imputed to the employer on the ground that the employer vested in the supervisor the

authority and the duty to terminate the harassment."  Torres v. Pisano, 116 F.3d 625, 637

(2d Cir. 1997).  This notice requirement is met where a jury could find that an appropriate

representative of the employer "was aware of facts sufficient to establish an inference

that a hostile environment existed."  Arias v. Nasdaq/ Amex Market Group, No. 00-Civ.-

9827(MBM), 2003 WL 354978, at *10 (S.D.N.Y. Feb. 18, 2003); see also Brunson v.

Bayer Corp., 237 F. Supp. 2d 192, 204 (D. Conn. 2002) (knowledge requirement met

where "reasonable jurors could conclude that trained supervisors would find . . . [the

complained-of conduct] potentially indicative of problematic behavior such that [the

employer] . . . should have been on notice of . . . [the alleged harasser's] apparent

proclivity for sexually inappropriate behavior").

        To be "appropriate," the employer's remedial action must be prompt:  the

employer "will be liable for any hostile work environment created by . . . [the plaintiff's]

co-workers unless it can show that it took immediate and appropriate remedial action."

Richardson v. New York State Dep't of Correctional Serv., 180 F.3d 426, 441 (2d Cir.

1999), abrogated on other grounds by White, 548 U.S. 53; see also Bruneau ex rel.

Schofield v. S. Kortfield Cent. Sch. Dist., 163 F.3d 749, 761 (2d Cir. 1998) (explaining,

in context of Title IX, that "an analysis of the appropriateness of the [remedial] actions

taken [once an educational institution is on notice of a hostile environment] would

necessarily incorporate the issue of timeliness," and that "[i]mplicit in our understanding

of 'appropriate' [i]s the notion that the action must be prompt").  Where "the evidence

creates an issue of fact as to whether an employer's action is effectively remedial and

prompt, summary judgment is inappropriate."  Richardson, 180 F.3d at 441 (internal

quotation omitted).  This precedent is in accordance with the EEOC's guidelines, which

provide that:  "[w]ith respect to conduct between fellow employees, an employer is

responsible for acts of sexual harassment in the workplace where the employer (or its

agents or supervisory employees) knows or should have known of the conduct, unless it

can show that it took immediate and appropriate corrective action."  29 C.F.R. 1604.11(d)

(cited in Richardson, 180 F.3d at 441).

          Here, a jury could reasonably find that Hesse – Arms Acres' Medical

Director and Gutierrez's direct supervisor – knew as of April 21, 2002 that Gutierrez had

kissed Plaintiff at work and that his conduct was unwelcome.  (See supra p. 6)  In light of

the evidence showing that Hesse had notice of numerous prior incidents (including at

least two within the past year) in which Gutierrez appeared to have violated Arms Acres'

sexual harassment policy (see supra pp. 11-12), a jury might also reasonably conclude

that Hesse knew that Gutierrez's conduct toward Plaintiff might rise to the level of

creating a hostile work environment.[9]  See Arias, 2003 WL 354978, at *10 (denying

summary judgment as to employer liability based on evidence that employee told his

supervisor that his co-workers were calling him names and bothering him and supervisor

admitted that he had a "vague awareness" that one of the names was a racial slur);

_____

[9]  The fact that Mugavero's prior reports to Hesse did not involve McArdle is
"irrelevant."  "[T]he prior incidents are probative of whether, given these incidents,
[Hesse and Arms Acres'] response was a reasonable one."  Seepersad v. D.A.O.R.
Security, Inc., No. 97-Civ.-2086(SS), 1998 WL 474205, at *5 n. 5 (S.D.N.Y. Aug. 12,
1998).

Brunson, 237 F. Supp. 2d at 204 (denying summary judgment to employer where plaintiff had complained to her immediate supervisors about sexual comments and gestures, and three other employees had complained to their supervisors of isolated incidents of inappropriate comments and touching by the same alleged harasser).

A jury could also reasonably conclude that Hesse did nothing in response to learning about the kissing incident, or any of the other conduct by Gutierrez about which he was informed, and that he never intended to take action concerning Gutierrez's conduct. The record here shows that ten days went by between Mugavero's report to Hesse concerning the kissing incident and McArdle's complaint to the Human Resources Director. It is a fair inference from the evidence that, but for McArdle's complaint, no remedial action concerning the kissing incident ever would have taken place. It is also noteworthy that while Arms Acres' sexual harassment policy instructs sexual harassment victims and witnesses how to report improper conduct, the policy is silent as to the duty of supervisors to whom sexual harassment is reported. (See Pltf. Ex. 8; Def. Ex. M at 1) Accordingly, a jury could find both that Hesse's response to Mugavero's complaint was negligent and that Arms Acres' sexual harassment policy was negligently drafted as to a senior manager's obligations after being notified of acts that might constitute sexual harassment.

Finally, although Arms Acres quickly took action after McArdle's May 1, 2002 complaint to the Human Resources Director, a jury could find that the ten day gap between the initial report to Hesse and Arms Acres' May 1 actions does not constitute "immediate and appropriate remedial action." Richardson, 180 F.3d at 441; see Seepersad v. D.A.O.R. Security, Inc., No. 97-Civ.-2086(SS), 1998 WL 474205, at **4-5

(S.D.N.Y. Aug. 12, 1998) (denying summary judgment to employer where victim made repeated complaints to supervisors about sexual harassment for a week before the employer – which had knowledge that harasser had been the target of a previous harassment complaint – took action).

In sum, the Court cannot conclude as a matter of law that Arms Acres should not be held liable for Gutierrez's conduct.  Accordingly, Arms Acres' motion for summary judgment concerning McArdle's hostile work environment claim is denied.[10]

**B.  Retaliation**

Plaintiff claims that she was retaliated against in two ways:  (1) Hesse solicited and obtained an allegedly false patient complaint against her; and (2) she was twice reprimanded about her clothing and instructed to wear a lab coat over her clothes. (Pltf. Br. at 17)[11]  "In order to establish a prima facie case of retaliation, . . . [a plaintiff]

---

[10]  To the extent that federal and New York state law differ with respect to whether liability can be imputed to the employer on a constructive knowledge theory, see Sowemimo, 43 F. Supp. 2d at 486, that difference is not material here because the Court's holding is based on Hesse's actual awareness of Gutierrez's conduct.

[11]  Plaintiff mentions in passing that she was "subjected to increased supervision" and given "'the worst' performance evaluation she had received while employed at Arms Acres," but she does not otherwise argue that her retaliation claim is based on these assertions.  (Pltf. Br. at 17)  Therefore, the Court concludes that Plaintiff has abandoned retaliation claims based on these acts.  Even if she had not, Arms Acres would be entitled to summary judgment concerning these claims.

  Even if Plaintiff was subjected to increased scrutiny and management attention, she does not offer evidence that she suffered any material adverse effects, such as a decrease in pay.  (See id. (citing Pltf. Rule 56.1 Statement ¶¶ 502-505))  As a matter of law, the increased supervision and criticism that Plaintiff complains of, without more, do not constitute an adverse employment action for purposes of a retaliation claim.  Lucenti v. Potter, 432 F. Supp. 2d 347, 364 (S.D.N.Y. 2006) (in general, "reprimands . . . and excessive scrutiny . . . do not constitute adverse employment actions" for purposes of a retaliation claim).  Plaintiff also concedes that to the extent her performance evaluation was worse than usual, it was because of her absences from work, and she does not offer

must show that:  (1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." Schiano, 445 F.3d at 608.  In the context of a retaliation claim, an adverse employment action is one that "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  White, 548 U.S. at 68.  "[P]etty slights, minor annoyances, and simple lack of good manners" will not normally constitute adverse employment actions for purposes of a retaliation claim.  Id.

Arms Acres argues that Plaintiff cannot make out a prima facie case of retaliation with respect to these incidents because they do not constitute materially adverse employment actions, and that Plaintiff also cannot demonstrate a causal connection "between the action[s] and the filing of her May 1, 2002 complaint."  (Def. Br. at 12)  Arms Acres is entitled to summary judgment with respect to the lab coat incidents, but not with respect to the patient complaint incident.

### 1. Lab Coat Incidents

Plaintiff has not offered any evidence, or cited any pertinent legal authority, to support a finding that she suffered a materially adverse employment action with respect to either of the lab coat incidents.  At most, the evidence shows that Plaintiff was reprimanded (without further consequence) for failing to dress appropriately.  (See supra p. 11)  A mere reprimand that has no formal consequences does not rise to the level of a materially adverse employment action.  Brummell v. Webster Cent. Sch. Dist., No.

---

any evidence that the performance evaluation was unjustified in that regard.  See Pltf. Rule 56.1 Statement ¶ 505.

06-Civ.-6437, 2009 WL 232780, at *9 (W.D.N.Y. Jan. 29, 2009) (reprimand concerning

performance that had no formal consequences did not rise to level of adverse

employment action in retaliation context); Lucenti, 432 F. Supp. 2d at 364 (in general,

"[r]eprimands. . . do not constitute adverse employment actions" for purposes of a

retaliation claim).

        Further, Plaintiff has not shown a causal connection between her protected

activity and the second lab coat incident, which happened more than a year after the then

most recent protected activity (i.e., Plaintiff's filing of this lawsuit).  (See supra p. 11)

She has no direct evidence of retaliation, and a year is far too long a gap to give rise to an

inference of retaliatory intent.  Morisseau v. DLA Piper, 532 F. Supp. 2d 595, 617

(S.D.N.Y. 2008) ("While the Second Circuit has not 'drawn a bright line to define the

outer limits beyond which a temporal relationship is too attenuated to establish a causal

relationship, the weight of authority supports the view that ten or twelve months is too

long.'" (internal quotation omitted) (collecting cases)).[12]

---

[12]  The first lab coat incident, in November 2002, happened at least two and a half months
after Defendants learned of Plaintiff's EEOC charge.  (The only evidence in the record
that indicates when Defendants learned of Plaintiff's EEOC charge is Defendants'
response to the charge, which is dated August 15, 2002.  (Pltf. Ex. 79))  This temporal
proximity could arguably be sufficient to satisfy Plaintiff's burden in establishing the
fourth element of her prima facie case, but the inference of retaliatory intent would not be
strong.  Compare Burkybile v. Bd. of Educ. of the Hastings-on Hudson Union Free Sch.
Dist., 411 F.3d 306, 314 (2d Cir. 2005) (stating that the court "has not established a
specific delay between protected activity and adverse employment action that defeats an
inference of causation" and noting that it has found an inference of retaliatory intent in
cases involving gaps of up to eight months) with Harrison v. North Shore Univ. Hosp.,
No. 04-Civ.-2033(WDW), 2008 WL 656674, at *12 (E.D.N.Y. March 6, 2008) ("[C]ase
law indicates that a gap of up to one to two months between the protected activity and the
adverse action may establish the requisite causal connection," while "[l]onger gaps . . .
have been found to be too attenuated to establish a causal connection."); Ponticelli v.

Therefore, Arms Acres is entitled to summary judgment on Plaintiff's retaliation claims insofar as they are based on the lab coat incidents.

### 2.   Patient Complaint Incident

The patient complaint incident is of an entirely different nature and significance than the lab coat incidents.  Viewed in the light most favorable to Plaintiff, the evidence shows that Hesse sua sponte solicited and obtained a patient complaint against Plaintiff – of a sexual nature – on the basis of a brief observation from outside an examining room:  (1) after Plaintiff's supervisors had concluded that there was no basis for complaint; (2) after the patient told Hesse he was not bothered by the conduct; and (3) in a manner that made the patient uncomfortable, involved suggesting to the patient what he should say in his statement, and led to Hesse being reprimanded by Arms Acres' Executive Director.  (See supra pp. 10-11)  Although Hesse ultimately failed to persuade the patient to pursue a complaint against Plaintiff, a jury could reasonably conclude that an employee in Plaintiff's position – i.e., a nurse working at a medical facility – "well might have [been] dissuaded" from pursuing her discrimination complaint after the facility's Medical Director pressured a patient to lodge an unfounded complaint of inappropriate behavior against her.  White, 548 U.S. at 68 (internal quotation omitted).

A jury could likewise reasonably infer a causal connection between the patient complaint incident and Plaintiff's protected activities, because "the retaliatory action occurred close in time to the protected activities."  McNair v. New York City Health & Hosp. Co., 160 F. Supp. 2d 601, 604 (S.D.N.Y. 2001).  This incident took place just a few weeks after Defendants responded to Plaintiff's EEOC charge, and there is no

---

Zurich Am. Ins. Group, 16 F. Supp. 2d 414, 436 (S.D.N.Y. 1998) (two-and-a-half month gap too long to give rise to inference of causal connection).

evidence showing that Defendants had had notice of the charge for a significantly longer period.  (See supra n.12)  See Harrison, 2008 WL 656674 at *12 (one to two months between the protected activity and retaliatory conduct may give rise to an inference of a causal connection at the prima facie stage).

Defendants argue that even if Plaintiff has established a prima facie case of retaliation – which she has – they are still entitled to summary judgment because Hesse had "legitimate, non-retaliatory reasons" for asking the patient for the complaint – namely, he "considered the technique Plaintiff employed to be 'unusual and inappropriate'" and it was Arms Acres' general practice to ask patients to make any complaints in writing.  (Def. Br. at 18-19)  Assuming arguendo that Defendants have offered a legitimate, non-discriminatory reason for Hesse's action, the burden shifts to Plaintiff to produce evidence showing that the stated reason was a pretext for retaliation. Feingold v. City of New York, 366 F.3d 138, 157 (2d Cir. 2004).  For several reasons, a jury could reasonably find here that Hesse's stated reason for obtaining the written complaint was pretextual.  For example, Hesse solicited and obtained the complaint after (1) Plaintiff's supervisors had determined that there was no reason for concern; and (2) the patient himself had stated that he was not bothered by Plaintiff's conduct.  Based on this evidence and the timing of the incident, a jury could also reasonably infer that Hesse was motivated at least in part by retaliatory intent, which is sufficient to defeat summary judgment on this claim.  See Gordon v. New York City Bd. of Educ., 232 F.3d 111, 118 (2d Cir. 2000) (plaintiff may prevail on Title VII retaliation claim "merely by showing that retaliation was one of a number of motivating factors").

Therefore, Arms Acres is not entitled to summary judgment on Plaintiff's retaliation claim concerning the patient complaint incident.

### C.   <u>Intentional Infliction of Emotional Distress</u>

Defendants are entitled to summary judgment on Plaintiff's claim for intentional infliction of emotional distress.  To prevail on such a claim under New York law, Plaintiff must prove:

> (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal relationship between conduct and the resulting injury; and (4) severe emotional distress. . . .  The crux for a claim of intentional infliction of emotional distress is predicated on the basis of extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society.

<u>Gallo v. Alitalia-Linee Aeree Italiane-Societa per Azioni</u>, 585 F. Supp. 2d 520, 553 (S.D.N.Y. 2008) (internal quotations and citations omitted).

"Typically harassment and some physical touching are not enough to satisfy the extreme and outrageous standard under New York law," and indeed, under governing New York law, "[i]t is all but impossible for a plaintiff to provide sufficient evidence to satisfy the extreme and outrageous conduct requirement."  <u>Id.</u> at 554.  Thus, courts in this District routinely grant defendants summary judgment on emotional distress claims unless the alleged harassment involves sexual battery.  <u>Ponticelli</u>, 16 F. Supp. 2d at 440-41 ("In the sexual harassment context, it appears that for an IIED claim to survive a summary judgment motion, sexual battery should be alleged."); <u>Gallo</u>, 585 F. Supp. 2d at 554 (granting defendants summary judgment on emotional distress claim, but not hostile work environment claim, where battery was not alleged).

Although Plaintiff has offered evidence of inappropriate touching here, courts have found that such conduct is not sufficiently extreme and outrageous to support

an emotional distress claim.[13]  See id. at 554 (granting summary judgment to defendants on emotional distress claim where plaintiff alleged that he "endured harassment on a daily basis, his complaints of such conduct went unheeded, and he was assaulted twice"); Gorton v. Gettel, No. 04-Civ.-0236(SCR), 2007 WL 2154193, at *4 (S.D.N.Y. June 22, 2007) (granting summary judgment to individual defendant on emotional distress claim where alleged harassment consisted of numerous sexually suggestive comments and gestures, and touching on shoulder or forearm).  Indeed, Plaintiff has not cited any cases where a court allowed an intentional infliction of emotional distress claim to proceed on similar facts.[14]  Therefore, Arms Acres is entitled to summary judgment on this claim.

### D.   Negligent Supervision and Retention

Arms Acres is also entitled to judgment as a matter of law on Plaintiff's negligent supervision and retention claim.  This claim is pre-empted by New York's Workers' Compensation Law, which provides in part that "[t]he right to compensation or benefits under this chapter, shall be the exclusive remedy to an employee . . . when such

_____

[13] To the extent Plaintiff's emotional distress claim is premised on the alleged retaliatory conduct – a claim that Plaintiff raised in the Complaint but not in her memorandum of law opposing summary judgment – it similarly fails because the alleged conduct is not sufficiently extreme or outrageous.

[14] Plaintiff cites four cases (Pltf. Br. at 24), none of which support her claim.  See Herlihy v. Metropolitan Museum of Art, 214 A.D.2d 250, 263, 633 N.Y.S.2d 106 (1st Dep't 1995) (holding that emotional distress claim based on use of racial and ethnic slurs should have been dismissed); Nader v. Gen. Motors Corp., 25 N.Y.2d 560, 571 (1970) (discussing, but not deciding sufficiency of, facts alleged in support of plaintiff's emotional distress claim); Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293 (1983) (affirming dismissal of emotional distress claim); Murphy v. ERA United Realty, 251 A.D.2d 469, 473-74, 674 N.Y.S.2d 415 (2d Dep't 1998) (affirming denial of summary judgment on emotional distress claim without explanation, but citing O'Reilly v. Executone of Albany, Inc., 121 A.D.2d 772, 503 N.Y.S.2d 185 (3d Dep't 1986), where the plaintiff alleged sexual battery including "repeated[] and malicious[] touch[ing] in a sexual manner," id., 121 A.D.2d at 773).

employee is injured . . . by the negligence or wrong of another in the same employ."

N.Y. Workers' Comp. Law § 29(6).  See Torres v. Pisano, 116 F.3d 625, 640 (2d Cir.

1997) (New York workers' compensation law bars negligence claims by an employee

against employer, including claims for negligent supervision brought in context of sexual

harassment suit).  In her opposition to Defendants' summary judgment motion, Plaintiff

does not contest Defendants' argument that they are entitled to judgment as a matter of

law on this claim.

### E.     Punitive Damages

A plaintiff is not entitled to punitive damages under Title VII[15] unless the

employer "engaged in intentional discrimination . . . with malice or with reckless

indifference to the federally protected rights of an aggrieved individual."  Zimmermann

v. Assoc. First Capital Corp., 251 F.3d 376, 384 (2d Cir. 2001) (internal quotation

omitted).  Thus, an employer may establish an affirmative defense to a punitive damages

claim by showing "both that it had an antidiscrimination policy and made a good faith

effort to enforce it."  Id. at 385.  Arms Acres argues that it is entitled to summary

judgment on Plaintiff's claim for punitive damages because it "promulgated a

comprehensive program designed to prevent and remedy claims of sexual harassment in

the workplace" and that "once Plaintiff availed herself of these . . . mechanisms,

Defendants responded to her professed concerns in a timely, thorough and effective

manner."  (Def. Br. at 24-25)

---

[15] Punitive damages are not available under the NYSHRL.  Farias v. Instructional Sys.,
Inc., 259 F.3d 91, 101 (2d Cir. 2001).

Arms Acres has not shown, however, that no reasonable jury could find in Plaintiff's favor.  As discussed above, there are factual disputes as to whether Arms Acres took sufficient steps to make its harassment policy known to employees, including Gutierrez and Plaintiff, during the relevant time period.  (See supra pp. 4-5 & n.2)  There are also factual disputes as to whether Defendants made a good faith effort to enforce the sexual harassment policy with respect to Gutierrez prior to May 1, 2002.  (See supra pp. 11-12)  Therefore, Arms Acres is not entitled to summary judgment on Plaintiff's claim for punitive damages.  See Cioffi v. New York Community Bank, 465 F. Supp. 2d 202, 213 (E.D.N.Y. 2006) (denying employer's motion for judgment as a matter of law as to punitive damages where evidence showed that employer had a written anti-discrimination policy, but a jury could reasonably find that "there was insufficient evidence of a good faith enforcement with respect to the plaintiff"); Greene v. Coach, Inc., 218 F. Supp. 2d 404, 414 (S.D.N.Y. 2002) (denying employer's motion for summary judgment as to punitive damages where employer produced evidence that it maintained an antidiscrimination policy, but the evidence "reveal[ed] little about the manner and extent to which . . . managers were exposed to these principles" and suggested a "dearth of antidiscrimination training during the time period at issue").

### III.  SUMMARY JUDGMENT AS TO HESSE

Plaintiff asserts aiding-and-abetting harassment and retaliation claims against Hesse under Section 296.6 of the NYSHRL (N.Y. Exec. L. § 296.6) (Counts V,

VI and IX).[16]  Hesse is entitled to summary judgment only with respect to the retaliation claim concerning the lab coat incidents.

An individual employee may be liable under Section 296.6 for aiding and abetting an employer's violation of the NYSHRL if he "actually participates in the conduct giving rise to" the claim.  Feingold, 366 F.3d at 158 (internal quotation omitted). Moreover, "a supervisor's failure to take adequate remedial measures can rise to the level of 'actual participation' under [Section 296.6]."  Lewis v. Triborough Bridge & Tunnel Auth., 77 F. Supp. 2d 376, 384 (S.D.N.Y. 1999); see also Lopes v. Caffe Centrale LLC, 548 F. Supp. 2d 47, 55 (S.D.N.Y. 2008) (holding that plaintiff could proceed on Section 296.6 claim against individual supervisor where she created triable issue of fact as to whether supervisor "refrain[ed] from acting to remedy discriminatory behavior toward the Plaintiff employee of which . . . [he was] aware"); Miotto v. Yonkers Public Sch., 534 F. Supp. 2d 422, 429 (S.D.N.Y. 2008) (holding that supervisors could be liable under Section 296.6 if they had knowledge of the alleged harasser's "prior similar conduct and took no remedial action").

Here, Plaintiff has offered evidence from which a jury could find that Hesse, who was Gutierrez's supervisor, was aware of Gutierrez's conduct toward Plaintiff but failed to take appropriate steps to address it.  Moreover, Hesse directly participated in the patient complaint incident.  Therefore, Hesse is not entitled to summary judgment on Plaintiff's claims that he violated the NYSHRL by aiding and

---

[16] Plaintiff also asserts an emotional distress claim against Hesse (Count X).  Hesse is entitled to summary judgment on this claim for the reasons stated above with respect to Arms Acres.  (See supra pp. 14-25)

abetting in the alleged harassment and the alleged retaliation with respect to the patient complaint.

However, to the extent Plaintiff asserts any other retaliation claims against Hesse, those claims must be dismissed.  "[B]efore an individual may be considered an aider and abettor" under the NYSHRL, the employer's liability "must first be established."  Sowemimo, 43 F. Supp. 2d at 490.  Because Arms Acres is entitled to summary judgment on Plaintiff's other retaliation claims, Hesse cannot be liable as an aider and abettor concerning these claims.  See id. at 491 (holding that plaintiff's "failure to establish the [employer's] . . . liability under the [NYS]HRL . . . eliminates her claims against . . . [the individual defendant] based on the same statute[]").

## IV.   SUMMARY JUDGMENT AS TO GUTIERREZ

Plaintiff also asserts aiding-and-abetting harassment and retaliation claims against Gutierrez.  (Pltf. Br. at 4-12)[17]  Gutierrez is entitled to summary judgment with

---

[17]  In the Complaint, Plaintiff cited the NYSHRL's direct liability provisions in her claims against Gutierrez, but she has since conceded that Gutierrez does not meet the requirements for direct liability, and now argues that he should be held liable as an aider and abettor.  (Pltf. Gutierrez Br. at 5 n.3)  Gutierrez argues that he is entitled to summary judgment, however, because Plaintiff did not cite NYSHRL § 296.6 in the Complaint.  So long as a plaintiff's complaint "gives full notice of the circumstances giving rise to . . . [her] claim for relief," however, the complaint "need not also correctly plead the legal theory or theories and statutory basis supporting the claim."  Marbury Mgmt., Inc. v. Kohn, 629 F.2d 705, 712 n.4 (2d Cir. 1980); see also Torrico v. Int'l Bus. Mach. Corp., 213 F. Supp. 2d 390, 396 (S.D.N.Y. 2002) (same).  Here, the Complaint gives adequate notice that Plaintiff seeks to hold Gutierrez individually liable under New York State law for his role in subjecting her to an allegedly hostile work environment and to retaliation.  (See Cmplt. ¶¶ 103-108)  Gutierrez does not complain that he was unfairly prejudiced by Plaintiff's failure to cite NYSHRL § 296.6 as a basis for her discrimination claim against him, and the record presented to the Court on the instant motion shows that he took extensive discovery relating to her claims.  Therefore, the Court declines to grant Gutierrez summary judgment on the ground that Plaintiff failed to cite NYSHRL § 296.6 in alleging her claims against him in the Complaint.  See Cruz v. Coach Stores, Inc., 202

respect to the retaliation claims, but not with respect to the hostile work environment claim.[18]

A. **Hostile Work Environment**

"To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive – that is, . . . creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's sex.'" Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007) (internal citations omitted); see also Schiano, 445 F.3d at 605 (to prevail on a hostile work environment claim, a plaintiff must show "that the work environment both objectively was, and subjectively was perceived by the plaintiff to be, sufficiently hostile to alter the conditions of employment for the worse").

Gutierrez argues that Plaintiff has not offered evidence sufficient for a jury to find in her favor on the first element of a hostile work environment claim.[19]  (Gutierrez

---

F.3d 560, 569 (2d Cir. 2000) (under Rule 15(b), a court may "may consider claims outside those raised in the pleadings so long as doing so does not cause prejudice").

[18]  Gutierrez argues that this Court should decline to hold that he can be individually liable under NYSHRL § 296.6 because state courts are divided on the question of whether Section 296.6 creates such liability.  (Gutierrez Br. at 8-9)  The Second Circuit has held, however, that individuals may be liable for their discriminatory conduct under NYSHRL § 296.6, and that holding is controlling here.  Feingold, 366 F.3d at 158 & n.19 (reaffirming that co-workers who actually participate in discriminatory conduct may be held liable under NYSHRL § 296.6, and noting that a majority of state courts have agreed).

[19]  Gutierrez also argues that "several of Plaintiff's allegations fail because they are sex-neutral."  (Gutierrez Br. at 15-16)  However, the question is whether, considering the totality of the evidence, a jury could reasonably find that Gutierrez engaged in the

Br. at 11-24)   To do so, Plaintiff must "adduce evidence sufficient to permit a reasonable jury to conclude that her workplace was permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [her] employment."  Petrosino v. Bell Atlantic, 385 F.3d 210, 221 (2d Cir. 2004) (internal quotations and citations omitted).  In determining whether Plaintiff has met her burden here, the Court must consider the "totality of the circumstances," id. at 221, including "the frequency of the discriminatory conduct; its severity; whether it [wa]s physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with . . . [Plaintiff's] work performance."  Schiano, 445 F.3d at 605.  The Court must assess the evidence from "the perspective . . . of a 'reasonable person in the plaintiff's position, considering all the circumstances [including] the social context in which particular behavior occurs and is experienced by its target.'"  Petrosino, 385 F.3d at 221.

"Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment."  Id. at 223.  However, comments or touching that seem relatively innocuous in isolation may reasonably be found to create an objectively hostile and abusive work

_____

complained-of conduct because of Plaintiff's sex.  See Patane, 508 F.3d at 112; Petrosino, 385 F.3d at 221 (court must consider the "totality of the circumstances"). Given the undisputedly sexual nature of much of Gutierrez's alleged conduct toward Plaintiff – e.g., his comments concerning her behind, remarks that she looked "eatable," his touching and kissing her, and his expressed desire to make love to her – a jury could reasonably find that he engaged in the conduct because of Plaintiff's sex.  See Alfano v. Costello, 294 F.3d 365, 375 (2d Cir. 2002) ("There is little question that incidents that are facially sex-neutral may sometimes be used to establish a course of sex-based discrimination – for example, where the same individual is accused of multiple acts of harassment, some overtly sexual and some not.").

environment if they occur with sufficient frequency over a period of time.  See Holtz v.

Rockefeller & Co., Inc., 258 F.3d 62, 75-76 (2d Cir. 2001) (summary judgment

unwarranted where evidence showed that for "months and months," the alleged harasser

"'grabb[ed]' and 'placed his hand on [the plaintiff's] hand' on a 'daily' basis,

'constantly,' 'whenever he had the opportunity,' . . . and that he 'used to touch [her] hair

a lot,'" and that the harasser engaged in other "sexually suggestive conduct, including

'obscene leers,' repeated efforts to peek underneath [plaintiff's] clothing, and a pattern of

teasing comments about her sex life"); Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d

Cir. 2000) ("[T]he plaintiff must demonstrate either that a single incident was

extraordinarily severe, or that a series of incidents were 'sufficiently continuous and

concerted' to have altered the conditions of her working environment.").

        Plaintiff has offered evidence that over a period of approximately three

months, from late January or early February 2002 through May 1, 2002, Gutierrez

engaged in steadily escalating conduct that was unwelcome to Plaintiff.  At the beginning

of this time period, there is evidence that Gutierrez's conduct included: (1) regularly

complimenting Plaintiff on her appearance and smell; (2) commenting on several

occasions on "how [Plaintiff's] behind looked" and telling her that she "should wear

those pants more often"; (3) asking Plaintiff to lunch "numerous" times, once by calling

her at home, and asking her approximately once per week if she would like to go to the

gym with him; and (4) touching Plaintiff by "squeeze[ing] [her] elbow area," "rub[bing] .

. . [her] back" and "caress[ing] [her] neck from behind," which happened more than ten times.  (See supra pp. 5-7)[20]

Plaintiff has also testified about three additional incidents that took place in mid-March or early April 2002:  (1) the kissing incident, in which Gutierrez told Plaintiff, "Gee, I love that lipstick, it looks good, I would love to taste it," and then kissed her on the mouth; (2) the medication room encounter, in which Gutierrez said, "Marie, you have my favorite slacks on, you look eatable from behind," and then "leaned into" her "buttocks" from behind with his "hips and his pubic region"; and (3) the incident in which Gutierrez told Plaintiff that she had looked great at a co-worker's party the previous weekend, and that if it was his "last day on earth," he "would love" to "make love to [her]."  (See supra pp. 5-7)[21]

A jury considering the totality of the circumstances could reasonably find that Gutierrez's conduct was frequent and humiliating, in light of the evidence that Gutierrez regularly made sexually-related comments and routinely touched Plaintiff in an

---

[20]  Gutierrez attempts to minimize the evidence concerning the frequency of his alleged conduct by arguing that the Court should disregard Plaintiff's testimony except to the extent that she can recall specific instances of the alleged conduct.  (Gutierrez Br. at 12-13)  However, in deciding this motion, the Court must draw all reasonable factual inferences in Plaintiff's favor, and because a jury could reasonably "credit . . . [her] general allegations" that the conduct occurred frequently, the Court will not disregard her testimony simply because she has not provided "specific details about each incident." Torres, 116 F.3d at 631.

[21]  For purposes of this motion, the Court will not consider the conduct that allegedly occurred at a co-worker's April 2002 party.  "When sexual harassing acts occur outside the workplace, the plaintiff must identify sufficient facts from which to infer a connection between the misconduct and the employment." Heskin v. Insite Advertising, Inc., No. 03-Civ.-2598(GBD)(AJP), 2005 WL 407646, at *22 (S.D.N.Y. 2005).  Plaintiff has not offered evidence showing that her attendance at this party was anything other than voluntary and for personal, rather than business, reasons.  Therefore, there is no basis for a jury to infer a connection between her attendance at the party and her employment.

unwelcome way for a period of months, and in light of the "social context" here, see
Petrosino, 385 F.3d at 221, which is that Gutierrez was a higher-level employee – a
doctor rather than a nurse – whose prior similar conduct had been tolerated by the
Medical Director of the facility.  Although most of the comments and touching were not
particularly severe when considered in isolation, two of the instances of touching in late
March and early April – the kissing incident and the medication room encounter – were
more severe, and there is evidence that the unwelcome conduct occurred frequently for a
period of several months.  Courts have denied summary judgment in similar cases where
the plaintiff offered evidence of repeated unwelcome comments and touching, including
touching that was clearly of a sexual nature and was not just incidental or accidental.
See, e.g., Holtz, 258 F.3d at 75-76 (2d Cir. 2001) (summary judgment not warranted
where alleged harasser's conduct included daily touching of plaintiff's hand or hair, and
alleged harasser also made comments about plaintiff's sex life and tried to look under her
clothing); Carrero v. New York City Hous. Auth., 890 F.2d 569, 572-73, 578 (2d Cir.
1989) (summary judgment not warranted where alleged harasser, who was plaintiff's
supervisor, touched plaintiff once on the arm and knee; kissed her on two occasions; and
attempted to kiss her on two other occasions); Parrish v. Sollecito, 249 F. Supp. 2d 342,
345-46, 349 (S.D.N.Y. 2003) (summary judgment not warranted where alleged harasser,
who was plaintiff's supervisor, stroked plaintiff's leg under her skirt on four occasions);
Matute v. Hyatt Corp., No. 98-Civ.-1712(AGS), 1999 WL 135204, at *1, *3 (S.D.N.Y.
March 11, 1999) (summary judgment not warranted where, over a period of six weeks,
the alleged harasser, who was plaintiff's supervisor, touched plaintiff twice on the
shoulder, attempted to kiss him, touched his genitals once and touched his chest once).

See also Wahlstrom v. Metro-North Commuter R.R. Co., 89 F. Supp. 2d 506, 511

(S.D.N.Y. 2000) (summary judgment not warranted where alleged harasser, who was a

co-worker, made a sexual comment, "wrapped his arms around [plaintiff], grabbed her in

a 'bear hug,' . . . and slapped her left buttock three times").[22]

_____

[22] In support of his argument, Gutierrez cites twenty-three cases in which courts have
granted defendants summary judgment concerning hostile work environment claims.
However, the evidence concerning the conduct of the alleged harasser in all of these
cases is distinguishable from the evidence here.

   For example, in some cases, the conduct at issue consisted solely of sexual comments or
gestures and did not include touching.  See Spina v. Our Lady of Mercy Med. Ctr., No.
97-Civ.-4661(RCC), 2003 WL 22434143, at *1, *3 (S.D.N.Y. Oct. 23, 2003) (over 15
months, alleged harasser commented on plaintiff's appearance, called her a "bitch" twice,
followed her to the restroom once (but did not enter), "leered," yelled at her, and pointed
his finger in his face); Shepard v. Frontier Commc'ns Servs., 92 F. Supp. 2d 279, 288
(S.D.N.Y. 2000) (alleged harasser called plaintiff "queen" or "princess" on four
occasions, once e-mailed her to state that "he felt he had 'outlived his usefulness,'" and
repeatedly requested that she attend business meals with him and other employees);
Feliciano v. Alpha Sector, Inc., No. 00-Civ.-9309, 2002 WL 1492139, at*2 (S.D.N.Y.
July 12, 2002) (alleged harasser asked plaintiff on dates, told her she was beautiful and
once attempted to hug her at work; other evidence concerned conduct in personal context
outside the workplace);  Grossman v. The Gap, Inc., No. 96-Civ.-7063(RPP), 1998 WL
142143, at **1-2 (S.D.N.Y. March 25, 1998) (over several months, harasser allegedly
asked plaintiff on dates several times; made a crude sexual comment to her at a staff
party; once asked her to show him a bathing suit she was trying on; and once followed
her around clothing store where they worked); O'Dell v. Trans World Entm't Corp., 153
F. Supp. 2d 378, 386 (S.D.N.Y. 2001) (plaintiff and alleged harasser went on several
dates; after relationship ended, harasser "repeatedly asked her out," "made comments
about her appearance, sent her e-mails professing his love for her, called her at work and
at home, invited her to tour New York City with him, gave her three gifts, and played her
a song that she found offensive"); Prince v. Cablevision Sys. Corp., 2005 WL 1060373,
at *6 (S.D.N.Y. May 6, 2005) (alleged conduct consisted of "an unspecified number of
occasions of inappropriate sex talk," which plaintiff did not give details about, and one
instance where plaintiff voluntarily accompanied alleged harasser and a co-worker to a
bar after a work-related party and alleged harasser "solicited her for sex" and "tried to
kiss her")' Russ v. Van Scoyoc Assoc., Inc., 122 F. Supp. 2d 29, 31 (D.D.C. 2000) (while
plaintiff and alleged harasser were socializing at a bar following a work party, alleged
harasser sexually propositioned plaintiff and admired her breasts); Carrasco v. Lenox Hill
Hosp., No. 99-Civ.-927(AGS), 2000 WL 520640, at *2, *8 (S.D.N.Y. Apr. 28, 2000)
(only evidence arguably supporting claim of sex-based harassment consisted of co-
worker comments on two occasions suggesting that plaintiff was homosexual, and co-

worker comments on another occasion "related to plaintiff's sexual relations with his wife").

In other cases, although there was some evidence of touching, there were substantially fewer incidents, or the incidents occurred more sporadically or were less severe.  See Jackson v. Citiwide Corp. Transp., No. 02-Civ.-1323(DC), 2004 WL 307243, at **2-3 (S.D.N.Y. Feb. 17, 2004) (evidence consisted of plaintiff's conclusory testimony that supervisor made repeated sexual jokes and comments and frequently "stared at [the plaintiff's] breasts," and on one occasion "pinched her on the side and rear end"); Hamilton v. Bally of Switzerland, No. 03-Civ.-5685(GEL), 2005 WL 1162450, at **6-8 (S.D.N.Y. May 17, 2005) (the only evidence of conduct that was not sex-neutral and was unwelcome to plaintiff at the time it occurred was one instance in which supervisor (who was female) touched plaintiff's breast while commenting that her bodysuit was "sexy," and one instance in which supervisor invited plaintiff for a drink after keeping her late); Shepherd v. Comptroller of Public Accounts of the State of Texas, 168 F.3d 871, 872, 874 (5th Cir. 1999) (over a year's time, alleged conduct included comments about plaintiff's appearance and a few invitations to sit on alleged harasser's lap; a few incidents of running hand down plaintiff's arm; and staring); Hockman v. Westward Commc'ns, LLC, 122 Fed. Appx. 734, 2004 WL 2980351, at **6-8 (5th Cir. 2004) (over a year and a half, alleged harasser remarked once to plaintiff about another employee's body; once "slapped her on the behind with a newspaper"; once attempted to kiss her; once asked her to come to the office early so they could be alone; once stood in the door of the bathroom while she washed her hands; and "'grabbed or brushed' against Plaintiff's breasts and behind" an unspecified number of times, in a manner that plaintiff conceded she first thought was accidental); Meriwether v. Caraustar Packaging Co., 326 F.3d 990, 992 (8th Cir. 2003) (plaintiff alleged a "single instance of a co-worker grabbing her buttock"); Koelsch v. Beltone Elec. Corp., 46 F.3d 705, 706 (7th Cir. 1995) (alleged harasser once stroked plaintiff's leg with his foot, and more than a year later expressed romantic interest in her approximately three times and once "grabbed [her] buttocks"); Aratesch v. MCNA Am. Bank, N.A., 146 F. Supp. 2d 476, 495 (D. Del. 2001) (alleged conduct included compliments, invitations to lunch, a personal remark about alleged harasser's marriage, asking co-worker (outside of plaintiff's presence) if co-worker was a lesbian, and rubbing plaintiff's leg with his foot while staring at her chest; court could not determine how often rubbing had occurred); Gostanian v. Bendel, No. 96-Civ.-1781(LAP), 1997 WL 214966, at *1, *7 (S.D.N.Y. Apr. 25, 1996) (plaintiff complained that alleged harasser, with whom he was in a consensual sexual relationship, demanded massages and lunch dates at work); Gupta v. Florida Bd. of Regents, 212 F.3d 571, 584-585 (11th Cir. 2000) (over six or seventh months, alleged harasser once told plaintiff she was beautiful; called her frequently at home; repeatedly asked her to lunch; stared at her twice; briefly touched her ring and bracelet; and touched her two other times – once placing his hand on her knee and once lifting the hem of her dress while commenting on the fabric – without otherwise making "any verbal suggestions or advances"); McGraw v. Wyeth-Ayerst Labs., Inc., No. 96-Civ.-5780, 1997 WL 799437 (E.D. Pa. Dec. 30, 1997) (over a period of months, alleged harasser repeatedly asked plaintiff out, once touched her face and stated he wished she could come on a business trip with him, and once

36

Because a reasonable jury could find that Gutierrez's conduct was sufficiently severe and pervasive to "alter the conditions of [Plaintiff's] employment for the worse," Schiano, 445 F.3d at 604, Gutierrez's motion for summary judgment concerning Plaintiff's hostile work environment claim is denied.

---

kissed her on the mouth); Saxton v. AT&T Co., 10 F.3d 526, 528 (7th Cir. 1993) (plaintiff and alleged harasser (her supervisor) met once to talk about business at a jazz club, where supervisor repeatedly touched her leg and kissed her once; plaintiff and supervisor met once three weeks later at arboretum where he allegedly "lurched" at her); Adusumilli v. Discover Financial Servs., Inc., 62 Fed. Appx, 721, 2003 WL 1870710, at **2 (7th Cir. 2003) (affirming dismissal for failure to state a claim against serial plaintiff who alleged "'ogling,' staring, and accidental touching," including one instance in which co-worker's penis allegedly brushed against plaintiff); Polimeni v. Am. Airlines, Inc., No. 92-Civ.-5702(RJD), 1996 WL 743351, at **1-2 (E.D.N.Y. Dec. 18, 1996) (on one occasion, alleged harasser told plaintiff she "need[ed] to be fucked and touched" while shaking her arm, and brushed against her breast; ten months later, harasser asked if she was afraid of him, called her a "bitch" and "blew in the back of [her] hair"; nine months later, harasser "'struck [her] in the buttocks and lower back area with his carry-on bag' when he walked by her").

Other decisions cited by Gutierrez are not supportive of his argument because they not only involved significantly less offensive conduct, but were also decided after a bench trial.  See Christoforou v. Ryder Truck Rental, Inc., 668 F. Supp. 294 (S.D.N.Y. 1987) (deciding against plaintiff after bench trial, and finding as a matter of fact that the only incidents that occurred were comments or questions about her personal life and one instance of touching plaintiff's hair); McFadden-Cooper v. New York City Transit Auth., No. 94-Civ.-4932(SMG), 1996 WL 68554, at *6 (E.D.N.Y. Feb. 5, 1996) (deciding against plaintiff after bench trial, and finding that plaintiff had shown only that alleged harasser made complimentary comments, stated that he "liked plaintiff '97% more' than his co-workers," once invited plaintiff to his church and offered to drive her there, and once told another employee to "leave his women alone").

The one decision Gutierrez cites concerning alleged conduct that was more severe than in this case, Armstrong v. Standard Furniture, No. 04-Civ.-0448, 2005 WL 2008514 (S.D. Ala. Aug. 22, 2005), is also distinguishable, because there was no evidence there that the alleged conduct was unwelcome, and there was strong evidence that it occurred in the context of a consensual sexual relationship.  See id. at *5 (describing co-worker testimony concerning consensual nature of relationship), *10 (noting that evidence did not suggest plaintiff perceived conduct as unwelcome at the time it occurred).

B.      **Retaliation**

Plaintiff has not offered evidence sufficient to sustain a retaliation claim against Gutierrez.  Because Plaintiff's only viable retaliation claim against Arms Acres concerns the patient complaint incident, Gutierrez cannot be liable as an aider and abettor for any other allegedly retaliatory conduct.  See Sowemimo, 43 F. Supp. 2d at 490-91. As to the patient complaint incident, Plaintiff has testified that she has no knowledge that Gutierrez was involved.  (See Def. Rule 56.1 Statement ¶¶ 283-84)[23]  Moreover, Plaintiff's Rule 56.1 Statement does not contain any statements of fact that purport to show Gutierrez's involvement in the patient complaint incident.  (See Pltf. Rule 56.1 Statement ¶¶ 447-69)  Because Plaintiff has offered no evidence showing that Gutierrez actually participated in this incident, he is entitled to summary judgment on her retaliation claim.  See Feingold, 366 F.3d at 158 (aiding and abetting liability may attach only if a co-worker "actually participates in the conduct giving rise to" the claim); Brown, 257 F.3d at 251 ("[A]n employment discrimination plaintiff faced with a properly supported summary judgment motion must 'do more than simply show that there is some metaphysical doubt as to the material facts'. . . . She must come forth with evidence sufficient to allow a reasonable jury to find in her favor.").

---

[23] Although Plaintiff refused to admit the cited statements of fact, she has not proffered any admissible evidence that would call them into dispute.  See Pltf. Rule 56.1 Response ¶¶ 283-84 (purporting to controvert Defendants' statements of material fact in paragraphs 501-510 of her Rule 56.1 Statement); Pltf. Rule 56.1 Statement ¶¶ 501-510 (discussing allegedly retaliatory conduct of Hesse, Berkowitz and Lipton, without providing any factual support for her claim that Gutierrez was involved).

## CONCLUSION

For the reasons stated above, Arms Acres' and Hesse's motion for summary judgment (Docket No. 46) is DENIED with respect to Plaintiff's hostile work environment claims and retaliation claim relating to the patient complaint incident (including her claim for punitive damages), and is otherwise GRANTED. Gutierrez's motion for summary judgment (Docket No. 50) is DENIED with respect to Plaintiff's hostile work environment claim, and is otherwise GRANTED.

Dated: New York, New York
       March 23, 2009

SO ORDERED.

Paul R. Gardephe

Paul G. Gardephe
United States District Judge

39